Martin F. Casey
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
mfc@caseybarnett.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CERTAIN UNDERWRITERS AT LLOYD'S a/s/o
THE GREAT FISH CO., LLC.,
PACIFIC CORAL SEAFOOD CO., INC and
CRACKER BARREL OLD COUNTRY STORE,   19 Civ.
INC.,

      Plaintiff,                                **COMPLAINT**

   - against –

M/V MAERSK SHANGHAI, her engines, tackle,
boilers, etc. and MAERSK A/S d/b/a Maersk Line.

      Defendants.
---------------------------------------------------------------X

      Plaintiff, CERTAIN UNDERWRITERS AT LLOYD'S a/s/o THE GREAT FISH CO., LLC, a/s/o PACIFIC CORAL SEAFOOD CO., INC., and a/s/o CRACKER BARREL OLD COUNTRY STORE, INC., by and through its attorneys, Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

## JURISDICTION

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the provisions of the Maersk Line bill of lading which provides for the adjudication of this dispute in the United States District Court for the Southern District of New York.

## **PARTIES**

2.  At all material times, CERTAIN UNDERWRITERS AT LLOYD'S (hereinafter "LLOYD'S" or "Plaintiff") was and is a corporation with an office and place of business located at One Lime Street, London, England, and is the subrogated underwriter of (i) two consignments of respectively 1,097 cartons and 4,400 cartons of Frozen Tilapia Fish, (ii) one consignment of 964 cartons of Frozen Breaded Shrimps, and (iii) two consignments of respectively 220 cartons of furniture, each laden on board the M/V MAERSK SHANGHAI, as more specifically described below.

3.  At all material times, THE GREAT FISH CO., LLC., (hereinafter "Great Fish" or "Plaintiff") was and is a business entity with an office and place of business located at 700 6th Street NW, Winter Haven, Florida 33881, and was the owner and consignee of two consignments of respectively 1,097 cartons and 4,400 cartons of Frozen Tilapia Fish, laden on board the M/V MAERSK SHANGHAI, as more specifically described below.

4.  At all material times, PACIFIC CORAL SEAFOOD CO., INC., (hereinafter "Pacific Coral" or "Plaintiff") was and is a corporation with an office and place of business located at 2240 Northeast 2nd Avenue, Miami, Florida 33137, and was the owner and consignee of a consignment of 964 cartons of Frozen Breaded Shrimp, laden on board the M/V MAERSK SHANGHAI, as more specifically described below.

5.  At all material times, CRACKER BARREL OLD COUNTRY STORE, INC., (hereinafter "Cracker Barrel" or "Plaintiff") was and is a corporation with an office and place of business located at 305 Hartmann Drive, Lebanon, Tennessee 37087, and was the owner and consignee of two consignments of respectively 220 cartons of furniture, laden on board the M/V MAERSK SHANGHAI, as more specifically described below.

6. At all material times, Defendant M/V MAERSK SHANGHAI (hereinafter "the Vessel") was and is an ocean-going container ship operated by Defendant Maersk, as more specifically described below, that carried the containerized cargo which is the subject matter of this lawsuit.

7. At all material times, defendant, MAERSK A/S d/b/a MAERSK LINE (hereinafter "MAERSK" or "Defendant") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 180 Park Avenue, Florham Park, New Jersey 07932, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire.

8. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

### Claim 1 – The Great Fish Company, LLC

9. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 8, as if herein set forth at length.

10. On or about January 2018, two consignments consisting respectively of 1,097 cartons of Frozen Tilapia Fish laden in refrigerated container MNBU 3352776 and 4,400 cartons of Frozen Tilapia Fish laden in refrigerated container MNBU 3300330 were booked with Maersk for transit from China to Miami, Florida.

11. On or about January 12, 2018, the Frozen Tilapia Fish consignment laden in container MNBU 3352776 was delivered into the care, custody and control of Maersk at the marine terminal in Beihai, China.

3

12. The transportation of the consignment laden in container MNBU 3352776 was arranged in consideration of an agreed upon freight and conditioned upon Maersk maintaining a supply air temperature of Minus 20 Degrees Celsius, all pursuant to Maersk Bill of Lading number MAEU963533753 dated January 22, 2018.

13. Thereafter, on about January 12, 2018 the container MNBU3 352776 was laden on board the M/V HUI JIN QIAO in Baihai, China.

14. Subsequently, container MNBU 3352776 was discharged from the M/V HUI JIN QIAO and was transshipped on board the M/V MAERSK SHANGHAI for transit to Miami, Florida.

15. On or about January 13, 2018, the Frozen Tilapia Fish consignment laden in container MNBU 3300330 was delivered into the care, custody and control of Maersk at the marine terminal in Zhanjiang, China.

16. The transportation of the consignment laden in container MNBU 3300330 was arranged in consideration of an agreed upon freight and conditioned upon Maersk maintaining a supply air temperature of Minus 18 Degrees Celsius, all pursuant to Maersk Bill of Lading number MAEU963360875, dated January 16, 2018.

17. Thereafter, on about January 13, 2018 the container MNBU 3300330 was laden on board the M/V HUI LAI LONG in Zhanjiang, China.

18. Subsequently, container MNBU 3300330 was discharged from the M/V HUI HAI LONG and was transshipped on board the M/V MAERSK SHANGHAI for transit to Miami, Florida.

19. On or about March 3, 2018 the M/V MAERSK SHANGHAI chose to depart from its berth at Norfolk, Virginia, bound for, *inter alia,* the port of Miami, Florida. Maersk did so

4

despite a severe Nor'easter that was raging in the area of Norfolk and extending out into the Atlantic Ocean. Shortly after departure from Chesapeake Bay, the vessel's on deck stow collapsed, resulting in at least 70 containers being damaged and/or falling overboard, including the two containers MNBU3352776 and MNBU3300330 carrying Great Fish's Frozen Tilapia Fish cargo.

20. Plaintiff, Great Fish's two consignments of Frozen Tilapia fish, laden in containers MNBU3352776 and MNBU3300330, fell overboard and were lost.

21. The invoice value of the two consignments of Frozen Tilapia Fish cargo totaled $104,314.00.

22. As a result of the foregoing, Plaintiff suffered damages in the amount of $104,314.00.

23. At all times relevant hereto, a contract of insurance for property damage was in effect between Great Fish and Lloyd's which provided coverage for, among other things, loss or damage to the consignments of frozen Tilapia Fish.

24. Pursuant to the contract of insurance between Great Fish and Lloyd's, monies have been expended on behalf of Great Fish to the detriment of Lloyd's due to the damages sustained during transit.

25. As Lloyd's has sustained damages as a result of said expenditures, expenditures rightly the responsibility of Defendant, Lloyd's has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant.

26. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $104,314.00.

### Claim 2 – Pacific Coral Seafood Co. Ltd.

27. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 8, as if herein set forth at length.

28. On or about January 2018, a consignment consisting of 964 cartons of frozen breaded Shrimp, laden in refrigerated container MWCU 6683677, was booked with Maersk for transit from China to Miami, Florida.

29. On or about January 13, 2018, the Frozen Shrimp consignment laden in container MWCU 6683677 was delivered into the care, custody and control of Maersk at the marine terminal in Zhanjiang, China.

30. The transportation of the consignment was arranged in consideration of an agreed upon freight and conditioned upon Maersk maintaining a supply air temperature of Minus 18 Degrees Celsius, all pursuant to Maersk Bill of Lading number MAEU963499955 dated January 18, 2018.

31. Thereafter, on about January 13, 2018 the container MWCU 6683677 was laden on board the M/V HUI HAI LONG.

32. Subsequently, container MWCU 6683677 was discharged from the M/V HUI HAI LONG and was transshipped on board the M/V MAERSK SHANGHAI, for transit to Miami, Florida.

33. On or about March 3, 2018 the M/V MAERSK SHANGHAI chose to depart from its berth at Norfolk, Virginia, bound for, *inter alia,* the port of Miami, Florida. Maersk did so

6

despite a severe Nor'easter that was raging in the area of Norfolk and extending out into the Atlantic Ocean. Shortly after departure from Chesapeake Bay, the vessel's on deck stow collapsed, resulting in at least 70 containers being damaged and/or falling overboard, including container MWCU6683677 carrying Pacific Coral's cargo of Frozen Shrimp.

34. Plaintiff, Pacific Coral's container, MWCU6683677, fell overboard and was lost.

35. The invoice value of the consignment of Frozen Fish totaled $86,760.00.

36. As a result of the foregoing, Plaintiff suffered damages in the amount of $86,760.00.

37. At all times relevant hereto, a contract of insurance for property damage was in effect between Pacific Coral and Lloyd's which provided coverage for, among other things, loss or damage to the consignment of frozen Shrimp.

38. Pursuant to the contract of insurance between Pacific Coral and Lloyd's, monies have been expended on behalf of Pacific Coral to the detriment of Lloyd's due to the damages sustained during transit.

39. As Lloyd's has sustained damages as a result of said expenditures, expenditures rightly the responsibility of Defendant, Lloyd's has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant.

40. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $86,760.00.

## Claim 3 – Cracker Barrel

41.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 8, as if herein set forth at length.

42.  On or about January 2018, two consignments consisting respectively of 220 cartons of furniture, laden into containers TCLU 6155380 and MSKU 8040005, were booked with Maersk for transit from Malaysia, to Savannah, Georgia.

43.  On or about January 23, 2018, the two consignments of Furniture, laden in containers TCLU 6155380 and MSKU 8040005, were delivered into the care, custody and control of Maersk at the marine terminal Tanjung Pelepas, Malaysia.

44.  The transportation of the Furniture consignments was arranged in consideration of an agreed upon freight, all pursuant to Maersk Bill of Lading number MAEU963548009 dated January 23, 2018.

45.  Thereafter, on about January 23, 2018, containers TCLU6155380 and MSKU8040005 were laden on board the M/V LICA MAERSK.

46.  Subsequently, containers TCLU 6155380 and MSKU 8040005 were discharged from the M/V LICA MAERSK and were transshipped on board the M/V MAERSK SHANGHAI for transit to Savannah, Georgia.

47.  On or about March 3, 2018 the M/V MAERSK SHANGHAI chose to depart from its berth at Norfolk, Virginia, bound for, *inter alia,* the port of Savannah, Georgia. Maersk did so despite a severe Nor'easter that was raging in the area of Norfolk and extending out into the Atlantic Ocean. Shortly after departure from Chesapeake Bay, the vessel's on deck stow collapsed, resulting in at least 70 containers being damaged and/or falling overboard, including containers TCLU 6155380 and MSKU 8040005 carrying Cracker Barrel's cargo of Furniture.

48. Plaintiff, Cracker Barrels containers TCLU6155380 and MSKU8040005 both fell overboard and were lost.

49. The C&F value of the cargo laden into containers TCLU6155380 and MSKU8040005 totaled $41,862.00.

50. As a result of the foregoing, Plaintiff suffered damages in the amount of $41,862.00.

51. At all times relevant hereto, a contract of insurance for property damage was in effect between Cracker Barrel and Lloyd's which provided coverage for, among other things, loss or damage to the consignment of Furniture.

52. Pursuant to the contract of insurance between Cracker Barrel and Lloyd's, monies have been expended on behalf of Cracker Barrel to the detriment of Lloyd's due to the damages sustained during transit.

53. As Lloyd's has sustained damages as a result of said expenditures, expenditures rightly the responsibility of Defendant, Lloyd's has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant.

54. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $41,862.00.

### AS AND FOR A FIRST CAUSE OF ACTION - CONTRACT

55. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 54, inclusive, as if herein set forth at length.

56. Pursuant to the contracts of carriage entered into by and between the parties, the Defendant owed contractual and statutory duties to the aforementioned cargo owners to carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

57. The Defendant breached its contractual and statutory duties by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

58. As a direct and proximate result of said breach of contract by Defendant, the Plaintiffs have suffered damages presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

59. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

### AS AND FOR A SECOND CAUSE OF ACTION - BAILMENT

60. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 54, inclusive, as if herein set forth at length.

61. At the time of the aforementioned incident, Defendant together with the entities they hired to act on their behalf, were acting as bailees of the aforementioned cargoes and in their own capacity, or through their contractors, agents, servants, or sub-bailees, had a duty to safely and properly keep, care for and deliver the shipment in the same good order and condition as

when entrusted to them. Defendant also had a duty to ensure that the services provided for the shipment were performed with reasonable care and in a non-negligent and workmanlike manner.

62.     Defendant breached its duties and obligations as bailee by failing to properly carry, bail keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

63.     As a direct and proximate result of said breach of contract by Defendant, the Plaintiffs have suffered damages presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

64.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

## AS AND FOR A THIRD CAUSE OF ACTION - NEGLIGENCE

65.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 54 inclusive, as if herein set forth at length.

66.     The Defendant owed a duty to the Plaintiffs to carry, bail, keep and care for, protect and deliver the aforementioned cargoes in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

67.     The Defendant breached and was negligent in exercising its duty to carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

68. As a direct and proximate result of the negligent acts committed by Defendant, the Plaintiffs have suffered damages presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

69. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

**AS AND FOR A FOURTH CAUSE OF ACTION - UNSEAWORTHINESS**

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 54, inclusive, as if herein set forth at length.

71. As the owners, operators, charterers and /or managers of the M/V MAERSK SHANGHAI, Defendants were responsible for properly manning, maintaining and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel was seaworthy and fit to carry cargoes that were delivered to and loaded on board the M/V MAERSK SHANGHAI during winter North Atlantic voyages.

72. The losses sustained by Plaintiffs were caused, in whole or in part, by the negligence and fault of Defendants, and /or their agents, representatives and independent contractors for whose acts and omissions it was responsible, including but not limited to, their failure to maintain, load and stow the M/V MAERSK SHANGHAI in a seaworthy condition.

73. As a direct and proximate result of said breach of contract by Defendants, the Plaintiffs have suffered damages presently estimated to be no less than $104,314.00 in respect to

the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

74. By reason of the foregoing, plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $104,314.00 in respect to the Great Fish claim; no less than $86,760.00 in respect to the Pacific Coral claim and no less than $41,862.00 in respect to the Cracker Barrel claim.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $104,314.00 in respect to the Great Fish claim, at least $86,760.00 in respect to the Pacific Coral, at least $41,862.00 in respect to the Cracker Barrel claim; together with interest, costs and the disbursements of this action and

3. That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
November 25, 2019

                                       **CASEY & BARNETT, LLC**
                                       Attorneys for Plaintiff

                           By: _____
                                       Martin F. Casey
                                       305 Broadway, Ste 1202
                                       New York, New York 10007
                                       (212) 286-0225